UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/25/2024
```

KAYDEAN GORDON,

-against-

SANTANDER CONSUMER USA INC. et al.

                Defendants.

22-cv-9551 (NSR)
OPINION & ORDER

Nelson S. Román, United States District Court Judge:

On October 18, 2022, Plaintiff Kaydean Gordon ("Plaintiff") commenced this action against Santander Consumer USA, Inc. ("Defendant") and NYC Motorcars of the Bronx ("NYC Motorcars") in the Supreme Court of the State of New York, County of Westchester, asserting violations of the Fair Credit Reporting Act ("FCRA"), the Truth in Lending Act ("TILA"), and New York state law. (Order to Show Cause and Motion for Summary Judgment ("OTSC"), ECF No. 1-1 at 55-57.) Presently before the Court is Defendant's motion to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b).[1] ("Motion", ECF No. 17.) For the following reasons, the Motion is GRANTED.

## BACKGROUND

The allegations in the OTSC are deemed true for the purpose of resolving the Motion. Plaintiff purchased a 2017 Mercedes Benz c300 (the "Vehicle") from NYC Motorcars on May 21, 2021. (OTSC ¶¶ 6-7; *see also* Retail Installment Contract, ECF No. 18, Ex. A.) The salesman (the "Salesman") from whom Plaintiff purchased the Vehicle requested her bank statements and verification of her income, ostensibly to facilitate financing. (OTSC ¶¶ 9-10.) The Salesman then

---

[1] For the purpose of this Opinion, Plaintiff's claims were set forth in her OTSC. (*See* ECF No. 1-1 at 55-57.)

told Plaintiff that she was approved for the financing with no down payment. (*Id.* ¶ 11.) Plaintiff returned the next day to sign for the Vehicle, whereupon the Salesman asked for contact information for a co-signer on the loan as "solely a backup" for the Vehicle purchase contract. (*Id.* ¶¶ 12, 15.) Plaintiff listed her mother as a co-signer and made a down payment of $4,515 in cash to the Salesman. (*Id.* ¶¶ 15, 17, 22, 39.) The Salesman informed Plaintiff that Defendant was the creditor for her auto loan and of the date payments would begin, but gave her no account number for the loan, or instructions on how to make payments. (*Id.* ¶ 25.) Plaintiff later discovered that NYC Motorcars used the co-signer information Plaintiff had given to run her mother's credit without authorization or warning (*id.* ¶ 18), and ran Plaintiff's own credit multiple times, resulting in seven hard inquiries on Plaintiff's credit report (*id.* ¶ 27).

Once Plaintiff arrived home with the Vehicle, she discovered her front license plate had fallen off and one of her tires had begun to flatten. (*Id.* ¶ 28.) Sometime thereafter, Plaintiff received a delinquency notice in the mail from Defendant (*id.* ¶ 30), who has a lien on the Vehicle (Certificate of Title, ECF No. 1-1 at 17). In July 2022, Plaintiff attempted twice to send a Notice of Recission to Defendant's listed mailing addresses in Texas, and received instead, in early August, a phone number with which to contact Defendant's executive office. (OTSC ¶¶ 32, 34.) Plaintiff then spoke with multiple employees of Defendant to dispute the balance on her loan, which she claims does not take into account her down payment. (*Id.* ¶ 39.) Defendant did not update the balance, nor send Plaintiff any documents or notices relating to the loan agreement. (*Id.* ¶¶ 37-39.)

## PROCEDURAL HISTORY

On October 18, 2022, Plaintiff commenced this action against Defendant and NYC

Motorcars in the Supreme Court of the State of New York, County of Westchester.[2] (OTSC, ECF No. 1-1 at 51-57.) On November 9, 2022, Defendant removed this action to federal court. (ECF No. 1.) On April 3, 2023, Defendant filed the Motion, and a memorandum of law in support thereof. ("Def.'s MOL", ECF No. 18.) Plaintiff submitted a letter in opposition to Defendant's Motion ("Pltf.'s Letter", ECF No. 10), as well as a memorandum of law in support of her opposition ("Pltf.'s MOL", ECF No. 11), which the Court jointly construes as her opposition papers. Defendant also filed a reply memorandum in further support of the Motion. ("Def.'s Reply", ECF No. 19.)

## LEGAL STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). Dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The materials that may be considered on a motion to dismiss are limited to "the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun &*

---

[2] NYC Motorcars has yet to appear in this action in either state or federal court. Plaintiff contends that she personally delivered documents to NYC Motorcars at its principal place of business in Bronx, New York, but it is unclear if NYC Motorcars has been properly served. (*See* ECF No. 1-1 at 11, 47, 78, 80, 82, 85, 90, 92, & 94.)

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## DISCUSSION

The Court prefaces its opinion by noting that Plaintiff is proceeding *pro se*. In reviewing a *pro se* complaint, the Court is "mindful that the [P]laintiff's pleadings should be held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). Plaintiff's OTSC is not a paragon of clarity, but, reading the document liberally, the Court discerns and addresses the following claims.

### I. FCRA Claim

Plaintiff asserts in her second cause of action that Defendant violated her rights under the FCRA. (*See* OTSC ¶ 45.) Plaintiff brings her claim pursuant to "16 C.F.R. § 313.4-a(2) [and] 15 U.S.C. § 1681-a(1)(4)-b(2)." (*Id.*)

16 C.F.R. § 313.4-a(2) is a part of a rule (the "Rule"), denominated Privacy of Consumer Financial Information, promulgated by the Federal Trade Commission to effectuate the Gramm–Leach–Blilely Act (GLBA), 15 U.S.C. § 6801 *et seq*. The Rule describes the content, form, timing and delivery of privacy and opt-out notices, the conditions under which financial institutions may disclose nonpublic personal information to nonaffiliated third parties, and the conditions under which third parties may redisclose it and use it. *See* 16 C.F.R. §§ 313.1—313.18. The portion of the Rule relied upon by Plaintiff requires that financial institutions circulate initial privacy notices to consumers prior to disclosing any nonpublic personal information about the consumer to any nonaffiliated third party. *See* 16 C.F.R. § 313.4-a(2).

As an initial matter, Plaintiff's reliance on the Rule to assert a FCRA violation is misplaced as the Rule does not relate to the FCRA. But even if Plaintiff were attempting to assert a GLBA violation, her claim would fail because "[n]o private right of action exists for an alleged violation of the GLBA." *Fed. Deposit Ins. Corp. for Citizens Nat'l Bank v. Credit Suisse First Bos. Mortg. Sec. Corp.*, No. 12CV4000LTSKNF, 2017 WL 5466666, at *5 (S.D.N.Y. Oct. 27, 2017) (quoting *Dunmire v. Morgan Stanley DW, Inc.,* 475 F.3d 956, 960 (8th Cir. 2007)). Rather, the GLBA is solely enforced by "the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law[.]" 15 U.S.C. § 6805(a).

Plaintiff's reliance upon "15 U.S.C. § 1681-a(1)(4)-b(2)" fares no better. Though the FCRA is codified at 15 U.S.C. § 1681 *et seq.*, 15 U.S.C. § 1681-a(1)(4)-b(2) is not part of the statute. Even assuming Plaintiff meant to refer to Sections 1681(a)(1) and 1681(a)(4) of the statute, both of these provisions merely delineate the Congressional findings and statement of purpose preceding the passing of the FCRA. Similarly, Section 1681(b) sets out the purpose of the FCRA, but creates no substantive legal rights. Not helping the confusion is the fact that Plaintiff only reiterates her reliance on "15 U.S.C. § 1681-a(1) and 15 U.S.C. § 1681-b" in her opposition papers. (Pltf.'s MOL at 4.)

Because Plaintiff accuses Defendant of having "failed to update the discrepancies in [her] principal [loan] balance," which then appeared on her credit report statement, the Court will construe Plaintiff's FCRA claim against Defendant as one for knowingly reporting inaccurate information under 15 U.S.C. § 1681s–2. The FCRA has two provisions governing the duties of credit furnishing agencies. Under subsection (a) of Section 1681s–2, furnishers of credit information must report accurate credit information. 15 U.S.C. § 1681s–2(a). To the extent

Plaintiff was attempting to assert a claim pursuant to Section 1681s–2(a), her claim fails because there is no private right of action under this section. *Longman v. Wachovia Bank, N.A.,* 702 F.3d 148, 151 (2d Cir. 2012) ("Although we have not previously addressed whether the Fair Credit Reporting Act provides a private cause of action for violations of § 1681s–2(a), the statute plainly restricts enforcement of that provision to federal and state authorities.").

Even if the Court construes Plaintiff's claim as arising under subsection (b) of Section 1681s–2, however, her claim still fails. Though subsection (b) permits a private cause of action, *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 276 (S.D.N.Y. 2020), a furnisher's duties under the subsection are only triggered by receipt of notice "pursuant to [S]ection 1681i(a)(2)…of a dispute with regard to the completeness or accuracy of any information provided," *Castellano v. JP Morgan Chase Bank, N.A.,* No. 13-CV-03390 NSR, 2014 WL 988563, at *8 (S.D.N.Y. Mar. 13, 2014) (quoting *Elmore v. North Fork Bankcorporation, Inc.,* 325 F.Supp.2d 336, 340 (S.D.N.Y. 2004)). Notice pursuant to Section 1681i(a)(2) means "notice from a credit reporting agency, *not* from a consumer directly.*" Longman v. Wachovia Bank, N.A.,* No. 3:09-CV-01669 JCH, 2011 WL 4352102, at *4 (D. Conn. Sept. 16, 2011), *aff'd,* 702 F.3d 148 (2d Cir. 2012) (emphasis added). Here, Plaintiff only alleges that she herself notified Defendant of discrepancies with her account balance, (OTSC ¶¶ 37, 39), *not* that she ever notified a credit reporting agency of a dispute regarding the accuracy of reported information on her credit report, or that any credit reporting agency ever notified Defendant of any such dispute. The FCRA is "quite clear", however, that a violation can occur only if it "post-dat[es] the furnisher's receipt of a report <u>from the credit reporting agency</u>. If Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a dispute, it would have been a simple matter to say so." *Ritchie v. N. Leasing Sys., Inc.,* No. 12-CV-4992 (KBF), 2016 WL 1241531, at *16 (S.D.N.Y.

Mar. 28, 2016), *aff'd sub nom. Ritchie v. Taylor,* 701 F. App'x 45 (2d Cir. 2017) (quoting *Elmore v. N. Fork Bancorporation, Inc.,* 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004)) (emphasis in original). Accordingly, because Section 1681s–2(b) requires that a dispute be submitted to a credit reporting agency, and Plaintiff does not allege having submitted any such dispute, Plaintiff fails to state a claim thereunder. Plaintiff's second cause of action is dismissed without prejudice.

## II.     TILA Claim

The Court construes Plaintiff's sixth cause of action as a claim for recission under the TILA. (*See* OTSC ¶¶ 40, 57.) In her sixth cause of action, Plaintiff contends that SC "failed to honor [her] Note of Rescission," thereby defaulting under the Note, and now is liable to her in damages (*id.* ¶ 63), as well as for the return of her deposit (*id.* ¶ 58). At different points in the OTSC, Plaintiff alternatively explains that she is bringing her claim pursuant to "U.S.C. § 1026.23-a(1)-d(3) [,] 15 U.S.C. § 1635-(a)(b)-(d)-(g)[, and] 15 U.S.C. § 1640-b" (*id.* ¶ 57), and/or "15 U.S.C. § 1635-(a)-(b)-(f) (*id.* ¶ 40). Relief is not available to Plaintiff under any of these provisions, and accordingly, her TILA claim fails.

The TILA was enacted to "assure a meaningful disclosure of credit terms…to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The OTSC references Section 1635, which is a TILA provision titled "Right of rescission as to certain transactions."[3] Under this provision, when a borrower applies for credit secured by their "principal dwelling," the lender must provide specific disclosures regarding the loan terms. 15 U.S.C. § 1635(a). If the lender fails to provide these required disclosures at the time of financing, the TILA gives the borrower the right to rescind the loan. *See id.* Plaintiff also relies

---

[3] The sixth cause of action also relies upon "U.S.C. § 1026.23-a(1)-d(3)," but no such section of the United States Code exists. It is likely that Plaintiff meant 12 C.F.R. §1026.23(a), also known as Regulation Z, which is a rule enacting the TILA's right of recission. To the extent Plaintiff meant to bring her claim pursuant to Regulation Z, that analysis folds into the above analysis of TILA Section 1635 above.

upon "15 U.S.C. § 1640-b" in bringing this claim. Section 1640 is the TILA's civil-liability provision and authorizes statutory damages for violations of TILA prescriptions governing consumer loans.

Plaintiff is not entitled to rescind the contract under Section 1635 because the loan agreement between her and Defendant was secured by the Vehicle, rather than real property that Plaintiff used as her "principal dwelling." *See Hew v. Wells Fargo Auto Fin. Corp.*, No. 23CV8558PKCMMH, 2023 WL 8788939, at *1 (E.D.N.Y. Dec. 19, 2023) ("Because Plaintiff seeks to rescind a loan that does not have any alleged connection to his 'principal dwelling,' he fails to state a claim for relief under § 1635(a) and its implementing regulations. Accordingly, his Complaint must be dismissed."); *Vassel v. Palisades Funding Corp.*, No. 19-CV-3241(EK)(RER), 2020 WL 2797274, at *3 (E.D.N.Y. May 28, 2020) (dismissing TILA claim because plaintiff failed to "allege that the loan in question was secured by his principal dwelling"). The TILA "protect[s] consumers whose residences are jeopardized by operation of all types of security interests acquired by creditors," *N. C. Freed Co. v. Bd. of Governors of Fed. Rsrv. Sys.*, 473 F.2d 1210, 1216 (2d Cir. 1973), but it does not provide any right of rescission where a security interest is taken in an automobile, *Cooper v. Chrysler Cap.*, No. 21-CV-6661-FPG, 2021 WL 6064345, at *1 n. 1 (W.D.N.Y. Dec. 22, 2021) (concluding that Section 1635(a) did not apply to a plaintiff's "auto-financing transaction"). Without a security interest in her principal dwelling, "the TILA's right of rescission does not apply to Plaintiff's transaction with the Defendant[]," *Robinson v. Guzman o/b/o Victory Mitsubishi,* No. 23-CV-0385 (LTS), 2023 WL 2393931, at *3 (S.D.N.Y. Mar. 6, 2023), and Plaintiff's sixth cause of action thus fails as a legal matter. Because of this, Plaintiff's claim for statutory damages under Section 1650 also fails.

The Second Circuit has held that leave to amend should be granted liberally to *pro se* litigants. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once"); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "[B]ut amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'" *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sept. 15, 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Given the inapplicability of TILA to the conduct at issue in Plaintiff's OTSC, the Court concludes that amendment of Plaintiff's TILA claim would be futile. *See Hew*, 2023 WL 8788939, at *2. Thus, the Court dismisses this claim with prejudice and without leave to amend.

### III. UCC Breach of Warranty Claim

Plaintiff asserts in her seventh cause of action that Defendant "failed to properly amend and/or investigate" the issues surrounding her purchase of the Vehicle from NYC Motorcars "after being made aware." (OTSC ¶ 61.) She brings this claim pursuant to "U.C.C. § 2-312-2(b), 16 C.F.R. § 313.4-a(2), [and] 15 U.S.C. § 1681-a(1)-(4)." (*Id.*) As described earlier in this Opinion, *see* Section I, *supra*, Plaintiff cannot bring a claim under 16 C.F.R. § 313.4-a(2) or 15 U.S.C. § 1681-a(1)-(4). Therefore, for purposes of evaluating Plaintiff's seventh cause of action, the Court considers only whether she has successfully stated a claim under U.C.C. § 2-312-2(b).

As an initial matter, it is unclear what provision of the U.C.C. Plaintiff is relying upon. Section 2-312 generally concerns the warranty of title, but contains no subsection 2(b). In Plaintiff's opposition papers, she amends her claim to arise under "U.C.C. § 2-312-1(2)." (*See* Pltf.'s MOL at 5,6; Pltf.'s Answer at 2.) This change does not completely resolve the confusion as Section 2-312 does not contain a subsection 1(2), but the Court understands Plaintiff to be referring

to subsection 1(b), which does exist. Subsection 1(b) provides that all contracts for sale contain a warranty by the seller that the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

Accordingly, Plaintiff appears to be arguing that she should have received the Vehicle free of Defendant's lien. This claim fails for two reasons. First, Plaintiff was aware at the time she executed the sale contract that she did not pay the entire balance owed to NYC Motorcars for the purchase of the Vehicle, and that, in order to finance her purchase, she would be taking on an auto loan. (OTSC ¶¶ 17, 25.) Therefore, Plaintiff can hardly claim that she expected to receive the Vehicle free from any encumbrance, nor does she allege that NYC Motorcars told her the title would be free from all liens. Second, even if Plaintiff could show that she expected clean title, subsection 1(b) provides for a warranty of title guaranteed by the *seller* – in this case, NYC Motorcars. Defendant is not liable for any potential breach of warranty by NYC Motorcars. Plaintiff's seventh cause of action against Defendant is therefore dismissed with prejudice.

### IV.  Business Malpractice Claim

Plaintiff's third cause of action is for business malpractice. The OTSC does not make clear against whom Plaintiff is asserting this claim, though in her opposition papers, she contends that Section "349-a(b)" of the New York General Business Law "prohibits the acts, omissions, and practices taken by defendants in this matter." (Pltf.'s Answer at 4.) The Court takes this to mean that Plaintiff is bringing a claim under Section 349 against both Defendant and NYC Motorcars.

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. L. § 349(a).[4] To state a claim under Section 349, "a plaintiff must allege that a

---

[4] Plaintiff brings her claim under Section "349-a(b)", but there is no such provision of the New York General Business Law. The Court understands Plaintiff, however, to be asserting a claim under both subsection (a) and (b).

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). Here, Plaintiff's allegations of materially misleading consumer-oriented conduct all involve NYC Motorcars, *not* Defendant. (*See, e.g.* OTSC ¶¶ 14, 15, 25, 28.) Plaintiff does not identify any representations by Defendant giving rise to the alleged fraud, nor does she explain how Defendant is responsible for NYC Motorcar's alleged representations. Plaintiff therefore fails to state a Section 349 claim against Defendant, and her claim is dismissed without prejudice.

V. **Failure to Provide Documentation Claim**

Plaintiff alleges that Defendant failed to provide her "with the proper documentation or notices" regarding their loan agreement. (*See* OTSC ¶ 38.) It is unclear what documentation or notices Plaintiff is referring to.[5] A review of the OTSC provides the Court with no basis to even speculate as to the legal theory on which this claim is invoked, let alone a basis to find that the OTSC pleads facts sufficient to state a plausible claim for relief. This claim is therefore dismissed without prejudice.

---

Section 349(b) permits the state attorney general to bring an action on behalf of the people of the state of New York to enjoin unlawful and deceptive acts or practices. *See* N.Y. Gen. Bus. L. § 349(b). Because Plaintiff is not the state attorney general, she is barred from asserting a claim under subsection (b), and the Court does not analyze the issue further.

[5] In her opposition papers, Plaintiff attempts to specify that this claim is one for copies of the Vehicle sale contract and possibly the relating loan agreement. (*See* Pltf.'s MOL at 6; Pltf.'s Answer at 2.) Plaintiff additionally references "NY Pers Prop L § 405" (Pltf.'s MOL at 6) and "NY GBL § 198-6(b)" (Pltf.'s Answer at 4) in her opposition papers in connection with this claim. Neither provision is named in the OTSC. Because the materials the Court may consider are limited to "the facts asserted within the four corners of the complaint," as well as any attached or referenced documents, *McCarthy*, 482 F.3d at 191, the Court will not include in its analysis of the viability of this claim any novel points raised in her opposing papers.

## VI. Novel Claims in Plaintiff's Opposition Papers

Plaintiff asserts several claims against Defendant for the first time in her opposition papers. In particular, she sets forth a claim for fraud under U.C.C. § 2-721 (Pltf.'s MOL at 5, 7) and a claim for recission under U.C.C. §§ 2-725-1 and 2-751-3 (*id.* at 8). There is no mention of any of these U.C.C. provisions, however, in the OTSC. Plaintiff is not permitted to amend the OTSC through her motion papers. *See Yarborough v. Queens Auto Mall, Inc.,* No. 08-CV-3179 DLI ALC, 2010 WL 1223584, at *2 (E.D.N.Y. Mar. 23, 2010) (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim raised for first time in plaintiff's opposition to a motion to dismiss)). Accordingly, this Court will not consider Plaintiff's claims under Sections 2-721, 2-725-1, or 2-751-3.

## CONCLUSION

For the foregoing reasons, Defendant's motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 17. The Clerk of Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at her address listed on ECF and to show service on the docket.

In summary, the Court dismisses without prejudice Plaintiff's FCRA claim, business malpractice claim, and claim for failure to provide documentation. The Court dismisses with prejudice Plaintiff's TILA claim and U.C.C. breach of warranty claim. Plaintiff is granted until February 26, 2024 to file an Amended Complaint consistent with this Opinion and Order re-asserting those claims which have been dismissed without prejudice. Failure to timely comply may result in the remaining claims being dismissed with prejudice.

This constitutes the Court's Opinion and Order.

Dated: January 25, 2024                                                                   SO ORDERED:

White Plains, New York

                                                                                         _____
                                                                                             NELSON S. ROMÁN
                                                                                        United States District Judge